UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| OLMSTED MEDICAL CENTER, | Case No. 14-CV-2916 (PJS/BRT) |
| Plaintiff, | |
| v. | ORDER |
| RONALD L. CARTER, | |
| Defendant/<br>Third-Party Plaintiff. | |
| v. | |
| MAYO CLINIC, | |
| Third-Party Defendant. | |

William L. French, for defendant/third-party plaintiff.[1]

Robert G. Benner and Jennifer M. Peterson, DUNLAP & SEEGER, P.A., for third-party defendant.

Plaintiff Olmsted Medical Center ("Olmsted") treated defendant Ronald Carter

for an injured knee and billed him for its services. Carter did not pay the bill. Olmsted

sued Carter in Minnesota state court. Carter filed a third-party complaint against his

employer, Mayo Clinic ("Mayo"), alleging that Mayo is liable for the debt under the

_____

[1]French withdrew as Carter's attorney after filing a brief on Carter's behalf
opposing Mayo's summary-judgment motion. ECF Nos. 31, 36, 38. Carter is currently
representing himself.

doctrine of promissory estoppel.  Mayo removed the case to this Court, arguing that

Carter's promissory-estoppel claim is preempted by the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., and thus that this Court has

jurisdiction over this case under 28 U.S.C. § 1331.

This matter is before the Court on Mayo's motion for summary judgment.  Mayo

contends that Carter's promissory-estoppel claim must be treated as an ERISA

claim—and that, as an ERISA claim, it must be dismissed because Carter did not

exhaust his administrative remedies.  The Court agrees, and therefore grants Mayo's

motion, dismisses the third-party claim against Mayo, and remands Olmsted's claim

against Carter to state court.

## I.  BACKGROUND

Carter was employed by Mayo and participated in the Mayo Medical Plan, an

ERISA plan administered by Mayo Clinic Health Solutions (which, for reasons not

readily apparent in the record, calls itself "MMSI").  ECF No. 22 ¶¶ 1-2.[2]  When MMSI

receives a claim that may relate to an injury suffered in an accident, MMSI sends the

participant an "Accident Letter" requesting additional information, such as whether the

---

[2]Carter named Mayo, not MMSI, as the defendant to his third-party complaint.
The record does not disclose the precise relationship between Mayo, MMSI, and the
plan (save for one document that describes MMSI as "the third-party administrator" of
the plan, ECF No. 22 ¶ 1).  But Mayo has not argued that it is not the proper defendant
to the third-party complaint; in fact, Mayo has treated MMSI's actions as if they were
Mayo's own.  The Court will do likewise.

participant was in fact injured in an accident and whether the accident was

employment-related.  ECF Nos. 22 ¶ 4, 22-2.  The plan provides that "[t]he covered

person has an obligation to cooperate completely with the Plan.  The covered person or

legal guardian must complete and sign all documents that may be required by the Plan

and take any other action necessary to secure the Plan rights."  ECF No. 22-4 at 4.

If a claim is denied and the participant disagrees with the determination, the

participant must file a timely appeal.  (Indeed, ERISA requires plans to offer

administrative review of claim denials.  29 U.S.C. § 1133.)  Participants are clearly

instructed:  "You must file an appeal within 180 days after the date you received notice

your claim is denied."  ECF No. 22-4 at 5.

Carter injured his knee and went to Olmsted for treatment (including a knee

operation) in December 2010.  ECF No. 22-3.  According to Carter, an employee of

Olmsted sought pre-authorization for the operation and was told by an employee of

MMSI named "Rick" that pre-authorization was not necessary and that the plan would

cover 70% of the cost.  *Id.*  The operation was performed on December 30, 2010.  *Id.*

Mayo says that MMSI mailed Accident Letters to Carter in January 2011—and

then again in February 2011—regarding the claims for his treatment at Olmsted, but

Carter did not respond.  ECF No. 22 ¶¶ 5-6.  Because Carter did not provide the

requested information, MMSI denied the claims on March 25, 2011 and sent Carter

notice that his claims had been denied. *Id.* ¶ 6-7; ECF No. 22-1. Carter claims that, although all of the forms were sent to the correct address, he never received the Accident Letters sent in January 2011, nor the Accident Letters sent in February 2011, nor the notice of the denial of his claims sent in March 2011. He admits, however, that he received notice of the denial of his claims on April 20, 2011, when Olmsted informed him that "MMSI was not paying for the operation." ECF Nos. 22 ¶ 8, 22-3.

On March 19, 2013, Olmsted sued Carter in Minnesota state court to recover the $14,421.58 that it had billed for the medical services that it had provided with respect to his injured knee. ECF No. 1-1 at 8. On July 31, 2013—four months after being sued, and more than *two years* after being notified that MMSI would not pay the claims for his knee treatment—Carter finally called MMSI and asked why MMSI had not paid the claims. ECF No. 22 ¶ 8. MMSI explained that the claims had been denied because Carter had not returned any of the Accident Letters; MMSI also told Carter that it was too late for him to appeal. *Id.*

More than three months passed. Then, on November 12, 2013—now more than *two-and-a-half years* after Carter had been told that his claims had been denied—Carter sent completed Accident Letters to MMSI. ECF Nos. 22-2, 22-3. On January 16, 2014, MMSI also received an administrative appeal form from Carter. ECF Nos. 22 ¶ 10, 22-3. (Carter asserts that he earlier tried to appeal the denial by writing to MMSI on November 12, 2013. ECF No. 22-3.) MMSI told Carter that he had lost the right to

appeal because he had not done so within 180 days of receiving notice of the denial of his claims. ECF No. 22-5.

Carter filed a third-party complaint against Mayo in the state-court lawsuit, claiming that Mayo was required to pay the bill that he had received from Olmsted under the doctrine of promissory estoppel. ECF No. 1-1 at 3-5. Specifically, Carter's third-party complaint alleges that the MMSI representative "clearly and definitely promised" that "the medical care and treatment needed to repair Carter's knee would be covered and paid for by Mayo" and that "Mayo refused to honor said promise and, consequently, refused to cover and pay for Carter's medical care and treatment incurred at [Olmsted]." *Id.* at 4. Mayo removed the case to this Court. Mayo now seeks dismissal of the third-party complaint, arguing that in substance, if not in form, Carter is bringing a claim for benefits under ERISA, and his claim must be dismissed because he failed to exhaust his administrative remedies.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

*B. Preemption*

ERISA established a "comprehensive legislative scheme" to regulate employee-benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-10 (2004). That scheme includes a broad preemption provision. Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

ERISA's scheme also contains a private cause of action that allows a plan participant to challenge the denial of a claim for benefits. Section § 502(a) provides: "A civil action may be brought—(1) by a participant or a beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). This civil-remedy provision "represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans" and is intended to be exclusive. *Aetna Health*, 542 U.S. at 208-09 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)).

The question, then, is whether Carter's promissory-estoppel claim against Mayo is a "state-law cause of action that duplicates, supplements, or supplants the ERISA civil

enforcement remedy . . . ." *Aetna Health*, 542 U.S. at 209. It is common for plaintiffs to use artful pleading to disguise what is in reality a claim for benefits under ERISA as a common-law claim under state law. The Supreme Court has warned courts to be wary of these attempts:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). *Metropolitan Life* [*Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)]. In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Aetna Health*, 542 U.S. at 210. Thus, even a claim that purports to have nothing to do with ERISA will be preempted if the "essence" of the claim relates to the denial of benefits. *Ibson v. United Healthcare Servs., Inc.*, 776 F.3d 941, 945 (8th Cir. 2014); *Thompson v. Gencare Health Sys., Inc.*, 202 F.3d 1072, 1073 (8th Cir. 2000); *Hull v. Fallon*, 188 F.3d 939, 943 (8th Cir. 1999).

In *Hull v. Fallon*, 188 F.3d 939 (8th Cir. 1999), the Eighth Circuit determined that a plaintiff's state-law medical-malpractice claim was preempted and presented a federal question under § 502(a). The plaintiff (Hull), who participated in an ERISA health-insurance plan, had asked for pre-authorization from the plan's administrator for a

"thallium stress test" after he experienced shortness of breath and chest and arm pain.

*Id* at 941. The administrator (who was also a doctor) denied Hull's request for the

thallium test and instead authorized a "treadmill stress test." *Id.* Hull later suffered a

heart attack and sued the administrator and the plan in state court alleging medical

malpractice by the administrator. *Id.*

The Eighth Circuit rejected Hull's argument that his claim was not an ERISA

claim because it arose from a doctor-patient relationship with the plan administrator.

The Eighth Circuit emphasized that the administrator had only answered calls seeking

authorization for the test and otherwise "had no relationship with Hull other than as

the Plan administrator." *Id.* at 942-43. The Eighth Circuit concluded that

> although Hull's characterization of his claims sound in
> medical malpractice, the essence of his claim rests on the
> denial of benefits. As a Plan participant, he could have
> brought an action under section 502(a). Because his claims
> relate to the administration of benefits, they fall squarely
> within the scope of section 502(a). Therefore, Hull's claims
> are completely preempted by ERISA.

*Id.* at 943; *see also Kuhl v. Lincoln Nat'l Health Plan of Kan. City, Inc.*, 999 F.2d 298, 302-03

(8th Cir. 1993) (agreeing that "[a]rtful pleading by characterizing [the plan

administrator's representative]'s actions in refusing to pay for the surgery as

'cancellation' or by characterizing the same administrative decisions as 'malpractice'

does not change the fact that plaintiffs' claims are based on the contention that [the

representative] improperly processed [plaintiff]'s claim for medical benefits").

Other courts of appeals have applied similar reasoning to conclude that state-law promissory-estoppel claims were preempted by ERISA. *See Variety Children's Hosp., Inc. v. Century Med. Health Plan*, 57 F.3d 1040, 1042-43 (11th Cir. 1995) ("Variety's promissory estoppel claim is based upon the initial certification of the child for treatment and the subsequent de-certification . . . . This claim, therefore, is not really that Variety relied upon Century's promise, but that . . . the plan [in fact] covered the treatment. As such, it is related to the benefits under the plan and preempted by ERISA."); *Cromell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275-76 (6th Cir. 1991) (plaintiffs' promissory-estoppel claim "based on their reasonable reliance on [the plan administrator]'s oral assurances of coverage" that sought "the recovery of benefits from the plan for health care services rendered" was "at the very heart of issues within the scope of ERISA's exclusive regulation" and preempted).

The Court can envision a promissory-estoppel claim that would be a real promissory-estoppel claim, rather than a claim for ERISA benefits disguised as a promissory-estoppel claim. Suppose, for example, that an employer fires an employee, but promises that it will continue to pay premiums so that she will continue to be covered under the employer's health-care plan for one year. Suppose further that, based on that promise, the employee undergoes an elective medical procedure six months later, only to find out that the employer did not fulfill its promise to continue to pay her premiums, and as a result she was terminated from the plan before she had the

procedure.  If the employee brings a promissory-estoppel claim against the employer, the claim would not seem to be preempted by ERISA.  In such a case, the employee would concede that she was *not* covered by the plan, and thus that she is *not* seeking benefits under the plan.  Instead, she would argue, she is seeking damages for the harm she suffered because she relied on the employer's promise that it would continue to pay premiums.

This case is quite different.  Here, an employee of Olmsted contacted the plan on Carter's behalf and was allegedly told by "Rick" (an employee of the plan's administrator) that pre-authorization of Carter's knee operation was not necessary and that the plan would cover 70% of the cost.[3]  Carter then elected to have the operation.  But neither Carter nor Mayo alleges that anything that Rick said was *incorrect*.  Carter was not denied benefits because he failed to get pre-authorization or because his operation was not covered under the terms of the plan.  Instead, Carter was denied benefits because he failed to return the Accident Letters and then, after learning that the plan had denied coverage because of his failure to return the Accident Letters, failed to file a timely appeal.

---

[3]There does not appear to be any admissible evidence of "Rick's" statement in the record, which is an independent reason why Mayo is entitled to summary judgment.  *See Oarfin Distribution, Inc. v. Nora*, No. 11-CV-0863 (PJS/AJB), 2013 WL 4780951, at *1 (D. Minn. Sept. 5, 2013).

Carter's claim is thus far removed from a real promissory-estoppel claim, in which the plaintiff alleges that the defendant made a promise and then harmed him by failing to keep that promise. Here, "Rick" was contacted with an inquiry about the scope of coverage under the plan, and "Rick" responded to the inquiry by accurately describing that coverage. Carter was not harmed because Rick made an error, but because Carter allegedly breached his obligations under the plan by failing to return the Accident Letters and then failed to file a timely appeal.[4] At bottom, Carter's claim is that Mayo should pay him benefits *under the plan* notwithstanding his failure to return the Accident Letters and his failure to file a timely appeal. That is an ERISA claim, not a promissory-estoppel claim.[5]

---

[4]Carter does not explicitly argue that he understood "Rick" to be guaranteeing that the plan would pay for his knee operation even if he breached the terms of the plan by, for example, failing to provide information that the plan needed to process his claim. Any such argument by Carter would be absurd and would further confirm that he is trying to pound the square peg that is his claim for ERISA benefits into the round hole that is the doctrine of promissory estoppel.

[5]Notably, it is Carter, a plan participant—rather than Olmsted, a third-party healthcare provider—who has sued Mayo. *Cf. In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 604-07 (8th Cir. 1996) (state-law negligent-misrepresentation claim of third-party healthcare provider not seeking benefit under plan as assignee of participant not preempted). And Carter's suit concerns a promise allegedly made to him as a plan participant by the plan administrator—not, for example, a promise made to him as an employee by an employer, or a promise made to him as a potential customer by a sales representative. *Cf. Wilson v. Zoellner*, 114 F.3d 713, 717-22 (8th Cir. 1997) (state-law claim concerning insurance salesman's negligent misrepresentation about coverage in solicitation for plan not preempted).

In sum, the "essence" of Carter's promissory-estoppel claim is a challenge to the denial of benefits under an ERISA plan, *see Hull*, 188 F.3d at 943, and Carter could have challenged the denial of those benefits under § 502(a), *see Aetna Health*, 542 U.S. at 210. His promissory-estoppel claim is therefore completely preempted.

## C. Exhaustion

When a state-law claim is completely preempted by ERISA, it is treated as a claim for benefits under § 502(a) and is subject to the requirements that apply to such claims. *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 292 (4th Cir. 2003); *see also Hull*, 188 F.3d at 941-43 (after finding state-law claims were completely preempted, district court proceeded to determine that plaintiff's allegations did not state "a claim cognizable under ERISA"; court of appeals did not review that ruling because plaintiff did not appeal it). One requirement that applies to such claims is the requirement that the plaintiff exhaust his administrative remedies. "Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his [ERISA] claim for relief is barred." *Chorosevic v. MetLife Choices*, 600 F.3d 934, 941 (8th Cir. 2010) (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1252 (8th Cir. 1998)). Failure to file a timely administrative appeal, when such an appeal is required by the plan, is a failure to exhaust administrative remedies. *Reindl v. Hartford Life & Accident Ins. Co.*, 705 F.3d 784, 787 (8th Cir. 2013); *Chorosevic*, 600 F.3d at 941-46.

Mayo's plan clearly requires that a participant "must" file an appeal within 180 days after learning of the denial of a claim for benefits. ECF No. 22-4 at 5. Even if it is true that Carter never received the Accident Letters and thus that MMSI erred in denying his claims because he did not return the Accident Letters, Carter was obligated to bring an administrative appeal of the denial. Carter admits that he learned of the denial of his claims on April 20, 2011, ECF Nos. 22 ¶ 8, 22-3, yet Carter did not appeal the denial until November 2013 (at the earliest)—over two-and-one-half years later. Carter failed to exhaust his administrative remedies, and thus his third-party complaint against Mayo—which, again, the Court has found to be a claim for benefits under ERISA—is barred. Accordingly, the Court will grant Mayo's motion for summary judgment.

Two housekeeping matters remain: First, the possibility that Carter might be able to bring an administrative challenge to the denial of his claims would generally counsel in favor of dismissing his complaint without prejudice, leaving him the option to refile a federal claim once his administrative remedies were exhausted. *See Back v. Danka Corp.*, 335 F.3d 790, 792 (8th Cir. 2003). But MMSI has already determined that administrative review is unavailable since Carter's time for appealing the denial of benefits expired years ago, so exhaustion is impossible and Carter's complaint must be dismissed with prejudice. *Gayle v. UPS*, 401 F.3d 222, 230 (4th Cir. 2005).

Second, the dismissal of Carter's third-party complaint removes the only basis

for this Court to exercise original jurisdiction over this litigation. The Court now has

the discretion to exercise supplemental jurisdiction over Olmsted's state-law claim

against Carter, dismiss that claim without prejudice, or remand the claim to state court.

*See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348-53 (1988);

*Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 598-99 (8th Cir. 2002); *Green v. Ameritrade, Inc.*, 279

F.3d 590, 594-95 (8th Cir. 2002). The Eighth Circuit has made it clear that, under the

circumstances of this case, the Court should not exercise supplemental jurisdiction over

the state-law claim. *See Hervey v. Cty. of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008)

(explaining that when federal claims are dismissed leaving only state claims, "[i]n most

cases" supplemental jurisdiction should not be exercised to "avoid needless decisions of

state law" and "as a matter of comity and to promote justice between the parties"

(quoting *Ivy v. Kimbrough*, 115 F.3d 550, 552-53 (8th Cir. 1997)); *see also Cohill*, 484 U.S. at

350. Therefore, the Court will remand this matter to state court. *See Cohill*, 484 U.S. at

350-53.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      Mayo's motion for summary judgment [ECF No. 19] is GRANTED.

2.    Carter's third-party complaint against Mayo is DISMISSED WITH

PREJUDICE.

3.    This matter is REMANDED to the Minnesota District Court, Third Judicial

District.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  August 26, 2015                        s/Patrick J. Schiltz
                                               Patrick J. Schiltz
                                               United States District Judge